IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,                CR No. 06-30006-AA

    Plaintiff,                              OPINION AND ORDER

  v.

LALO ESPINOZA-FLORES,

    Defendant.
_____

AIKEN, Judge:

    On April 7, 2006, a superseding indictment was returned charging defendant with possession with intent to distribute fifty or more grams of actual methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(viii); illegal reentry in violation of 8 U.S.C. § 1326(a); and two counts of alien in possession of a firearm in violation of 18 U.S.C. § 922(g)(5). Defendant moves to suppress all evidence and statements obtained as a result of a

1    - OPINION AND ORDER

warrantless search of his residence on January 28, 2006, arguing that the search violated his rights under the Fourth Amendment.

On April 12, 2007, the court heard oral argument and testimony from several witnesses. Defendant's motion is denied.

## BACKGROUND

On January 19, 2006, Medford Police Detective Gary Hatten obtained a search warrant for defendant and his red Ford Mustang after a confidential informant on two occasions conducted controlled methamphetamine buys.

During the evening of January 28, 2006, defendant was observed driving his car in Medford. Officer Whipple stopped the vehicle, and Officer Cromwell and Det. Hatten were called in for assistance. Defendant was arrested, handcuffed, and placed in the back of a patrol car.

After defendant was detained, Immigration Customs Enforcement Agent Fernando Lozano, who is fluent in Spanish, spoke with defendant. Although Agent Lozano was wearing a "raid jacket," he had no visible weapon. Agent Lozano informed defendant of his Miranda rights and of his right to have the Mexican consulate contacted. According to the government, defendant indicated that he understood his rights and did not want the Mexican consulate notified of his arrest.

During Lozano's questioning, defendant stated that he lived with his uncle's family at 633 Cherry Street in Medford. Agent

2   - OPINION AND ORDER

Lozano told plaintiff that officers had a search warrant for the car. Defendant indicated that there were no drugs in his vehicle and that officers could search it. According to the government, when asked by Agent Lozano, defendant stated that officers could also search his residence.

Officers found a metal box in defendant's car. Defendant eventually admitted that the box contained drugs and that a "Pedro Rojas" had driven from San Jose to deliver a small amount of methamphetamine. Also, defendant stated that Rojas delivered methamphetamine to Jose Perez, and that Perez would sell small amounts to defendant. Pursuant to the search warrant for defendant's car, officers seized approximately 17 grams of methamphetamine and $759 in cash.

Agent Lozano again asked defendant if officers could search defendant's house. Defendant said yes, and that he lived in the garage in the back.

Officers took defendant to 633 Cherry Street, contacted defendant's uncle (who lived in the main residence) and told him that defendant had consented to a search of the garage area. Defendant's uncle also gave his consent to search. As officers searched the garage, they encountered a padlocked closet.

Agent Lozano asked if defendant had the key to the locked closet. Defendant said that he did not, but that officers could break the door open. When Agent Lozano asked defendant what was in

3   - OPINION AND ORDER

the closet, defendant responded, "It's what you're looking for." Defendant also said there was a pound of crystal methamphetamine, a handgun, and a rifle in the closet.

Agent Lozano prepared a written consent statement in Spanish for defendant to sign. Defendant signed the form, and Agent Lozano relayed to the officers that defendant had given consent to open the closet. Defendant then gave a detailed statement about his methamphetamine source.

Officers opened the closed and found a large baggie of crystal methamphetamine, a loaded .380 handgun, an unloaded rifle, $486 in cash, digital scales, MSM, and packaging materials.

While at Cherry Street, defendant began experiencing chest pains. An ambulance was called to the scene and Agent Lozano provided translation for the medical providers. Eventually, defendant was taken to the hospital for treatment.

## DISCUSSION

Defendant does not dispute that he gave written consent to search the locked closet in his residence. Instead, he argues that his consent was not voluntary. Therefore, defendant maintains that the evidence seized during the search of his residence and all statements obtained after the search must be suppressed.

"Voluntariness is a factual issue based on the totality of the circumstances surrounding the giving of consent." United States v. Alfonso, 759 F.2d 728, 740 (9th Cir. 1985); United States v.

Morning, 64 F.3d 531, 533 (9th Cir. 1995).  The government must demonstrate, by a preponderance of the evidence, that the consent was freely and voluntarily given and not the result of duress or coercion.  Schneckloth v. Bustamonte, 412 U.S. 218, 248 (1973); United States v. Chan-Jimenez, 125 F.3d 1324, 1327 (9th Cir. 1997).

In determining voluntariness, courts have considered the following factors: (1) whether the person was in custody; (2) whether the officers had their guns drawn; (3) whether Miranda warnings were given; (4) whether the person was told that he had a right not to consent; (5) whether the person was told a search warrant could be obtained; and (6) the person's belief as to the likelihood that contraband would be discovered.  United States v. Spires, 3 F.3d 1234, 1237 (9th Cir. 1993).  Although these factors may aid in the determination, "the full richness of any encounter must be considered by the district court."  Morning, 64 F.3d 531.

In this case, defendant was in custody.  However, the fact that a defendant is in custody, by itself, does not render consent involuntary.  See United States v. Watson, 423 U.S. 411, 424 (1976); United States v. Lindsey, 877 F.2d 777, 783 (9th Cir. 1989).  Defendant does not dispute that Agent Lozano advised him of his Miranda and consulate rights, and that he understood those rights.  While defendant argued that he was "stopped at gunpoint," and several witnesses testified that it was standard protocol to have guns drawn during a felony stop, defendant did not testify

5    - OPINION AND ORDER

that any police officer had his gun drawn or exhibited coercive behavior after the first few moments of his apprehension.

Rather, defendant testified that Agent Lozano was "angry" when he approached defendant in the patrol car. Defendant further testified that Agent Lozano told defendant that he knew where defendant lived and that he had a "paper" that allowed the search of defendant's house. Defendant denied giving consent to search his residence and testified that Agent Lozano told defendant to sign the written consent statement because the police already had a warrant to search the house. Defendant testified that he was never told that he could refuse to consent to a search and that he felt pressured to sign the written consent statement.

Like Officer Cromwell and Det. Hatten, Agent Lozano testified that defendant was non-confrontational when taken into custody, and that it was a low-key arrest situation. Agent Lozano testified that he introduced himself and advised defendant of his <u>Miranda</u> rights and consulate communication privileges. After defendant indicated that he understood his right to remain silent, Agent Lozano read the warrant to defendant in Spanish and explained its reason and purpose. Agent Lozano further testified that after drugs were found in defendant's car, Agent Lozano asked defendant if officers could search his residence, and defendant answered yes. At the time, Det. Hatten and two officers were in the vicinity of the patrol car, where Agent Lozano was standing near an open door.

6   - OPINION AND ORDER

At Cherry Street, Agent Lozano testified that he asked defendant about the locked closet. Defendant told him that drugs and guns could be found in the closet and that the officers could break into it. Under the circumstances, Agent Lozano decided that he should prepare a written consent form.

I find Agent Lozano's testimony credible regarding defendant's verbal and written consent. Officer Cromwell, Det. Hatten, and Agent Lozano all testified that defendant's arrest was low-key and non-confrontational. Agent Lozano indicated that he might have been wearing a raid jacket but that his weapon is concealed on his right hip. No officer observed Lozano speak or act in a threatening manner toward defendant, and defendant confirmed that no threats were made against him. Further, the testimony reflects that defendant was cooperative and did not seem hesitant when speaking to Agent Lozano or when he signed the consent statement.

Although it is unclear whether defendant was advised of his right to refuse consent, this factor does not vitiate the voluntariness of his consent. See Schneckloth, 412 U.S. at 227; United States v. Ritter, 752 F.2d 435, 439 (9th Cir. 1985); see also United States v. Rodriguez-Preciado, 300 F.3d 1118, 1126 (9th Cir. 2005) (district court did not err in finding consent voluntary even though the defendant was not advised that he could withhold consent).

Finally, defendant makes no suggestion that Agent Lozano

7    - OPINION AND ORDER

approached him with the consent form after he began experiencing chest pains but before an ambulance was summoned. Instead, defendant testified that when he informed officers he was feeling unwell, they called an ambulance and he was taken to hospital.

Accordingly, I find that the government meets its burden and that defendant's consent to search his residence and locked closet was voluntary and not the product of coercion.

## CONCLUSION

Defendant's Motion to Suppress Evidence (doc. 23) is DENIED. IT IS SO ORDERED.

Dated this __30__ day of April, 2007.

> /s/ Ann Aiken
> Ann Aiken
> United States District Judge

8    - OPINION AND ORDER